**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* H.**K., C.S., W.S., E.S., and W.K.**

**No. 21-0665** (Nicholas County 20-JA-144)

**MEMORANDUM DECISION**

Petitioner Mother C.K., by counsel Joe Mosko, appeals the Circuit Court of Nicholas County's July 20, 2021, order terminating her parental rights to W.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany N. Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Susan Hill ("guardian"), filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights to H.K., C.S., W.S., E.S., and W.K. rather than imposing a less-restrictive dispositional alternative, such as a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner failed to maintain a safe and suitable home for her four older children, H.K., C.S., W.S., and E.S. The DHHR alleged that the Nicholas County Family Court ordered petitioner to reside with the children's grandfather until she could obtain an independent residence. Despite this order, petitioner left the grandfather's home with the children and "ha[d] been taking the children from one house to another" for several days. The DHHR alleged that petitioner returned to the grandfather's home with the children and engaged in a violent altercation with him while

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

the children were present. Petitioner then left with the children and took up residence with an individual with a Child Protective Services ("CPS") history, which the DHHR alleged petitioner knew or should have known. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in October of 2020, and petitioner stipulated to the allegations in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Thereafter, petitioner moved for a post-adjudicatory improvement period, and the circuit court granted that motion. The court ordered that petitioner participate in parenting and adult life skills classes, supervised visitation with the children, a parental fitness evaluation, and random drug screening. The circuit court also ordered that petitioner have no contact with W.B., the father of petitioner's unborn child and a felon, previously convicted of child abuse resulting in death. Petitioner agreed to all the terms and conditions of her improvement period.

In November of 2020, the guardian filed a motion to revoke petitioner's improvement period. The guardian alleged that during their forensic interviews, the children stated that they were around W.B. "often." The children stated that petitioner directed them to refer to W.B. as "Sam" in front of others, rather than his real name. The guardian also alleged that the visitation provider discovered W.B. hiding in a bedroom during petitioner's supervised visitation with the children. The visitation provider immediately ended the visit and removed the children from the home. The guardian asserted that petitioner failed her improvement period by allowing W.B. to be around the children.

The circuit court held a hearing on the guardian's motion to revoke petitioner's improvement period in December of 2020. The circuit court found that petitioner knowingly associated with W.B., an individual convicted of killing a child, and permitted W.B. to have contact with the children. The court also found that W.B. was in petitioner's home during a supervised visitation with the children and petitioner was "evasive" about his presence. Additionally, the circuit court found that petitioner directed the children "to hide their contact with" W.B. The circuit court found that W.B. was "currently charged criminally for violent acts against" petitioner. The circuit court concluded that no amount of therapy or services would remedy the poor judgment petitioner exercised by allowing a convicted murderer to be around the children. Ultimately, the circuit court revoked petitioner's improvement period.

In January of 2021, the DHHR amended the child abuse and neglect petition to include newborn W.K. as an infant respondent and W.B. as an adult respondent. The DHHR alleged that W.B. was convicted of child abuse resulting in death in 2006, after abusing his then one-month-old daughter. The DHHR alleged that W.B.'s sentencing order set forth that the injuries to the child "were horrible" and "occurred at the hands of [W.B.]" The DHHR also included allegations regarding the revocation of petitioner's improvement period, including that petitioner's children were aware that W.B. "was a murderer" and that the children were afraid of him.

After a series of continuances, the circuit court held an adjudicatory hearing on the amended petition and a dispositional hearing for H.K., C.S., W.S., and E.S. A CPS worker testified as to petitioner's improvement period and its revocation due to her violation of its terms. The CPS worker also testified that petitioner continued to have contact with W.B. since the

termination of her improvement period. The CPS worker testified that W.B. attended W.K.'s pediatric appointment with petitioner and acted "belligerent" toward the CPS worker. The CPS worker also testified that one month prior to the dispositional hearing, petitioner and W.B. were involved in a domestic altercation that was witnessed by a service provider. The CPS worker further testified that petitioner tested positive for methamphetamine a total of thirteen times in March, April, and May of 2021.

A law enforcement officer testified that he responded to a domestic violence situation in May of 2021, involving petitioner and W.B. The officer stated that a service provider reported the domestic violence and described petitioner being drug by the hair and bloodied. The witness identified the perpetrator of the violence as W.B. The officer charged W.B. with domestic battery. The officer later interviewed petitioner, who stated that she was tired of "being beat on [and] tired of the drugs."

At the time of the dispositional hearing, petitioner was participating in a twenty-eight-day inpatient substance abuse treatment program. A counselor for that program testified that petitioner had been involved in the program and was amenable to treatment for her substance abuse and other issues "intrinsically tied to substance abuse." The counselor testified that petitioner had "expressed interest" in the ninety-day residential program after she completed the twenty-eight-day program. One of petitioner's service providers testified that she had been working with petitioner since January of 2021, and petitioner had participated in nine sessions in that five-month period. She testified that she believed petitioner could be successful in services but that it was necessary for petitioner to treat her substance abuse issues. The provider confirmed that petitioner had tested positive for controlled substances multiple times since January of 2021.

Finally, petitioner testified that she met W.B. in 2018 and that their relationship was violent. Petitioner admitted that she recanted past statements to law enforcement out of fear of W.B. Petitioner also admitted that she had contact with W.B. during her improvement period and after it had been terminated. She testified that she acquired controlled substances from W.B. and had previously participated in a sober living program in 2018. Petitioner explained that her ex-husband had custody of her children during that time. Petitioner testified that she was involved in a family court proceeding prior to the abuse and neglect proceedings and did not have custody of her children due to her substance abuse. Petitioner testified that she last used methamphetamine and "MDMA" in May of 2021 and last used heroin in 2019. She testified that she was under the influence of methamphetamine during her parental fitness evaluation. Petitioner agreed that her controlled substance use negatively affected her ability to parent the children and that she did not have a home for the children.

Ultimately, the circuit court found that petitioner had a serious drug addiction that affected her ability to parent and that she was only recently addressing. The circuit court further found that petitioner had a pattern of associating with individuals that put both her and her children's lives and wellbeing in jeopardy and a history of domestic violence that affected her ability to parent the children. The circuit court found that petitioner failed to fully participate in a reasonable family case plan, which had been designed to address these issues. The circuit court also referenced petitioner's parental fitness evaluation, which included an "extremely poor"

prognosis for petitioner's parental improvement and indicated that there were no services or interventions available to correct petitioner's parenting. The court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of petitioner's rights to H.K., C.S., W.S., and E.S. was necessary for the children's welfare. The circuit court also found clear and convincing evidence that W.K. was an abused child and petitioner was an abusing parent. The circuit court terminated petitioner's rights to H.K., C.S., W.S., and E.S. and set a dispositional hearing for W.K. in its June 10, 2021, order.

The circuit court held the final dispositional hearing regarding W.K. in July of 2021. Petitioner testified that she completed the twenty-eight-day substance abuse treatment program. Afterward, she started a new program, the "Anchor Project," which, she explained, was a six-week to two-year program. Petitioner testified that the current program included counseling and treatment for battered women's syndrome and post-traumatic stress disorder. Petitioner testified that her plan included having a residence and employment at the end of the two-year program. Petitioner admitted that while she maintained an independent apartment during her residential treatment, the apartment did not have utilities and was not suitable for a child.

Petitioner's parental fitness evaluator testified that petitioner was very hostile and defensive during the evaluation, especially when discussing her relationship with W.B. The evaluator testified that petitioner was "very upset" with her when the evaluator "criticized the fact that [W.B.] had been found to have murdered a child." Petitioner reportedly replied that she had forgiven W.B. for the crime. The evaluator rendered an "extremely poor" diagnosis for parental improvement based upon petitioner's failure to accept responsibility for her actions, her prior CPS history, her significant mental health issues, and her significant substance abuse issues. The evaluator explained that this was "the worst" prognosis that could be issued.

Petitioner's visitation supervisor testified regarding an incident when W.B. was found in the home during a supervised visitation in November of 2020. She explained that she transported petitioner to Wal-Mart to purchase items prior to the visit and that petitioner was nervous regarding the scheduled visitation. Petitioner did not inform the visitation supervisor of W.B.'s presence until the supervisor insisted on inspecting each room of petitioner's then-newly-acquired two-bedroom apartment. Petitioner stopped the supervisor from entering her bedroom and informed her that "he" was in her room and he would not leave. The supervisor testified that she asked petitioner to confirm that "he" was still in the room, and she did. The supervisor ended the visit. Although the supervisor did not personally see W.B., she inferred that the "he" petitioner referred to was W.B.

Finally, a CPS worker testified that petitioner provided him a different story regarding W.B.'s presence during the supervised visitation. He testified that petitioner originally told him that she did not know how W.B. entered her home prior to the visit. When the CPS worker suggested that surveillance cameras in the area may show W.B. entering her apartment, petitioner changed her statement. The CPS worker emphasized that petitioner had just moved into the apartment and inferred that petitioner informed W.B. where she was living. The CPS worker confirmed that petitioner was aware that W.B. was to have no contact with the children as a term of her improvement period. The CPS worker also testified that W.B. was present for

W.K.'s well child medical visit, which was a violation of the terms of petitioner's improvement period.

The circuit court ultimately found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future. It considered that petitioner failed to comply with a reasonable family case plan and had not remedied the conditions of neglect or abuse on her own. The circuit court noted that petitioner did not have stable housing, had only recently begun addressing her substance abuse problem, and had a history of domestic violence, which had not been remedied. The circuit court further found that it was necessary for W.K.'s welfare to terminate petitioner's parental rights. Accordingly, the circuit court entered its July 20, 2021, order, terminating her parental, legal, physical, and custodial rights to W.K. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Before addressing the appropriateness of the circuit court's termination of petitioner's parental rights to W.K., we must first address petitioner's challenge to the circuit court's termination of her rights to four older children who are not at issue in this appeal because of petitioner's failure to timely appeal the June 10, 2021, order terminating her parental rights to those children. Pursuant to Rule 11 of the West Virginia Rules of Appellate Procedure and Rule 49 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, an appeal of a final dispositional order of a child abuse and neglect proceeding must be perfected within sixty days of the entry of that order. *See In re S.L.*, 243 W. Va. 559, 848 S.E.2d 634 (2020) (emphasizing the timeline set forth in Rule 11 and Rule 49 as a deadline that "serves to resolve abuse and neglect matters in a timely fashion and provide permanency for the children at issue").

---

[2]W.K.'s father (W.B.) voluntarily relinquished his parental rights to the child. According to the parties, the permanency plan for the child is adoption in his current relative placement.

Therefore, the deadline to perfect an appeal of the circuit court's June 10, 2021, order was August 9, 2021. Petitioner did not meet this deadline, nor did she move for an extension of the same. Accordingly, she has failed to timely appeal that order, and we will not consider her arguments regarding those older children.

Having resolved this preliminary matter, we now turn to petitioner's argument that the circuit court erred in terminating her parental rights to W.K. rather than imposing a less-restrictive dispositional alternative, such as a post-dispositional improvement period. According to petitioner, termination was in error because she was participating in a substance abuse treatment program, which also addressed domestic violence. She concedes that she had contact with W.B. in violation of her improvement period and misled the DHHR in regard to that contact. However, petitioner argues that she fully acknowledged the conditions of abuse and neglect and was taking measurable steps to remedy them. Upon our review, we find no error in the circuit court's termination of petitioner's parental rights.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d)(3) provides that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" means that

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner readily admits that she failed to follow through with a reasonable family case plan. It is abundantly clear from the record that petitioner continued to associate with W.B. and allowed her children to have contact with W.B., despite her knowledge that he was previously convicted of a violent crime against his child. Petitioner's continued contact with W.B. violated the agreed upon terms of her improvement period. Further, even after petitioner's improvement period was revoked, the evidence shows that she continued to have contact with W.B. Petitioner admitted during her dispositional testimony that she continued to abuse methamphetamine until May of 2021 and that she acquired controlled substances from W.B.

While it is notable that petitioner sought substance abuse treatment after the revocation of her post-adjudicatory improvement period, we share the circuit court's concern that she had only recently begun treatment. Petitioner testified that she had an extensive substance abuse history, for which she had previously sought treatment in 2018. In June of 2021, petitioner testified that she had not yet completed a twenty-eight-day treatment program, and the evidence showed that she had expressed interest in additional treatment. In July of 2021, however, petitioner explained that she had just begun a two-year program and was in the "lockdown" phase of the program, revealing that she was under close supervision by the program's staff. Petitioner testified that in

two years, she expected to have employment and stable housing, but admitted she had neither at the time of the dispositional hearing. We have held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Considering W.K.'s young age and petitioner's history of failing to fully participate in remedial measures designed to reunify the family during the proceedings, we agree with the circuit court that petitioner's recent substance abuse treatment was insufficient to support reunification. As such, her potential to remedy the conditions of neglect and abuse was highly speculative. Therefore, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could remedy the conditions of neglect or abuse in the near future and that termination of petitioner's parental rights was necessary for the welfare of W.K.

To the extent that petitioner argues that a less-restrictive dispositional alternative than termination of her parental rights was appropriate, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected is fully supported by the record on appeal. Therefore, the circuit court acted within its discretion in terminating petitioner's parental rights, rather than imposing a less-restrictive dispositional alternative, and we find no abuse of discretion in the circuit court's ultimate decision.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 20, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

7

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton